Docket No. 16–15469
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

NARUTO, by and through his Next Friend,

*Plaintiff-Appellant,*

v.

DAVID J. SLATER, *et al.*,

*Defendants-Appellees*
_____

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:15-cv-04324 (Orrick, J.)
_____

## OPENING BRIEF OF PLAINTIFF–APPELLANT
_____

IRELL & MANELLA LLP
David A. Schwarz (Cal. Bar. No. 159376)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067–4276
Telephone:  (310) 277–1010
Facsimile:  (310) 203–7199
dschwarz@irell.com

Attorneys for Plaintiff-Appellant Naruto

9840675

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Next Friend People

for the Ethical Treatment of Animals, Inc., certifies that People for the Ethical

Treatment of Animals, Inc., has no parent corporation and no publicly held

corporation owns People for the Ethical Treatment of Animals, Inc., stock.

Dated:  July 28, 2016

IRELL & MANELLA LLP

By:  __/s/ David A. Schwarz_____

Attorneys for Plaintiff–Appellant Naruto,
by and through his Next Friend, People
for the Ethical Treatment of Animals, Inc.

*Of Counsel:*

Jeffrey S. Kerr, Esq.
General Counsel
PETA FOUNDATION

9840675

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUE FOR REVIEW .............................................. 1

STATEMENT OF THE CASE ....................................................................... 1

    A.    Nature of the Case ........................................................ 1

    B.    Procedural History ........................................................ 2

STATEMENT OF FACTS .............................................................................. 3

SUMMARY OF ARGUMENT ....................................................................... 4

STANDARD OF REVIEW ............................................................................. 6

ARGUMENT .................................................................................................. 7

    A.    The Copyright Act grants standing to anyone who creates
           an "original work of authorship" .................................................. 7

    B.    "Authorship" under the Copyright Act is not limited to
           humans ...................................................................................... 12

    C.    The Copyright Act must be interpreted broadly to achieve
           its purpose ................................................................................. 15

    D.    Animal authorship under the Copyright Act is an issue of
           first impression ......................................................................... 19

    E.    The district court erroneously relied on the *Compendium* ......... 21

CONCLUSION .............................................................................................. 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 2000) ...................................................................10

*ABC, Inc. v. Aereo, Inc.*,
  __ U.S. __ , 134 S.Ct. 2498 (2014)..................................................12

*Action Tapes, Inc. v. Mattson*,
  462 F.3d 1010 (8th Cir. 2006) ............................................................17

*Authors Guild, Inc. v. HathiTrust*,
  755 F.3d 87 (2d Cir. 2014) ...........................................................8, 14

*Bartok v. Boosey & Hawkes, Inc.*,
  523 F.2d 941 (2d Cir. 1975) ...............................................................26

*Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*,
  No. C 93–20079 JW, 1995 WL 836331 (N.D. Cal. Dec. 14, 1995) .................17

*Bleistein v. Donaldson Lithographing Co.*,
  188 U.S. 239 (1903).................................................................24, 25

*Boyds Collection, Ltd. v. Bearington Collection, Inc.*,
  360 F. Supp. 2d 655 (M.D. Penn. 2005)...........................................27

*Burrow-Giles Lithographic Co. v. Sarony*,
  111 U.S. 53 (1884)..........................................................................*passim*

*Cetacean Cmty. v. Bush*,
  386 F.3d 1169 (9th Cir. 2004) .......................................................11, 21

*Christensen v. Harris County*,
  529 U.S. 576 (2000).........................................................................25

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989)....................................................................8, 9, 13

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)...........................................................................15

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir.), *cert. denied,* 136 S.Ct. 1390 (2015) ...........................8

*Defenders of Wildlife v. Gutierrez*,
    532 F.3d 913 (D.C. Cir. 2008) .............................................................................7

*Durham Industries, Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980) .............................................................................11

*Ets-Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000) ..........................................................................24

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991).........................................................................................15

*First Nat. Bank of Boston v. Bellotti,*
    435 U.S. 765 (1978).........................................................................................16

*Goldstein v. California*,
    412 U.S. 546 (1973)......................................................................................9, 16

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985).........................................................................................15

*Imperial Toy Corp. v. Goffa Int'l Corp.*,
    988 F. Supp. 617 (E.D.N.Y. 1997) ..................................................................13

*Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*,
    274 F. 932 (2d Cir. 1921), *cert. denied,* 259 U.S. 581 (1922) ..........................24

*John Wiley & Sons, Inc. v. DRK Photo*,
    998 F. Supp. 2d 262 (S.D.N.Y. 2014) ................................................................8

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .............................................................................7

*Los Angeles News Service v. Tullo*,
    973 F.2d 791 (9th Cir. 1992) ...........................................................................24

*Mason v. Jamie Music Pub. Co.*,
    658 F. Supp. 2d 571 (S.D.N.Y. 2009) ..............................................................19

*McGary v. City of Portland*,
386 F.3d 1259 (9th Cir. 2004) ...............................................................7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..............................................................................12

*Monge v. Maya Magazines, Inc.*,
688 F.3d 1164 (9th Cir. 2012) .............................................................18

*New Idea Farm. Equip. Corp. v. Sperry Corp.*,
916 F.2d 1561 (Fed. Cir. 1990) ...........................................................13

*North Coast Indus. v. Jason Maxwell, Inc.*,
972 F.2d 1031 (9th Cir. 1992) .............................................................23

*Nottage v. Jackson*,
11 Q.B.D. 627 (1883) ...........................................................................10

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) ...............................................................6

*Obergefell v. Hodges*,
__ U.S. __ , 135 S.Ct. 2584 (2015)......................................................20

*Peters v. West*,
692 F.3d 629 (7th Cir. 2012) ...............................................................19

*Playboy Enterprises Inc. v. Dumas*,
53 F.3d 549 (2d Cir.), *cert. denied,* 516 U.S. 1010 (1995) ................13

*Preminger v. Peake*,
552 F.3d 757 (9th Cir. 2008) .................................................................7

*Quality King Distribs., Inc. v. L'Anza Research Int'l, Inc.*,
523 U.S. 135 (1998)..............................................................................13

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2008) ...............................................................6

*Santa Clara Cnty. v. Southern Pacific R. Co.*,
118 U.S. 394 (1886)..............................................................................16

- iv -

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
   709 F.3d 1281 (9th Cir. 2013) ...............................................................6

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir.), *cert. denied,* 546 U.S. 827 (2005) .................8

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)..............................................................................25

*Sony Corp. of Am. v. Universal City Studios*,
   464 U.S. 417 (1984)..........................................................................5, 12

*Trade-Mark Cases*, 100 U.S. 82, 94 (1879)............................................23

*Twentieth Century Music Corp. v. Aiken*,
   422 U.S. 151 (1975)..............................................................................15

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
   692 F.3d 1009 (9th Cir. 2012) ...............................................................9

*United States v. Mead Corp.*,
   533 U.S. 218 (2001)..............................................................................25

*United States v. Nordic Vill. Inc.*,
   503 U.S. 30 (1992)................................................................................11

*United States v. Paramount Pictures, Inc.*,
   334 U.S. 131 (1948)..............................................................................15

*Urantia Foundation v. Maaherra*,
   114 F.3d 955 (9th Cir. 1997) ...........................................................21, 26

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) .............................................................13

*White-Smith Music Publishing Co. v. Apollo Co.*,
   209 U.S. 1 (1908)..................................................................................19

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001) .............18, 19

**Statutes**

17 U.S.C. § 101 ...............................................................................14, 22

17 U.S.C. § 102 ..................................................................................4, 7, 15, 17

17 U.S.C. § 201 ..................................................................................8, 9, 12, 17

17 U.S.C. § 302(c) ........................................................................................14

17 U.S.C. § 409(3) ........................................................................................14

17 U.S.C. § 411(a) ........................................................................................22

17 U.S.C. § 501 ..............................................................................................8

28 U.S.C. § 1291 ............................................................................................1

28 U.S.C. § 1331 ............................................................................................1

28 U.S.C. § 1338(a) ........................................................................................1

35 U.S.C. § 100(f) ..........................................................................................9

35 U.S.C. § 116(9) ..........................................................................................9

**Rules**

Fed. R. App. P. 4(a)(1)(A) ...........................................................................1

Fed. R. Civ. Proc. 17(c) ...........................................................................4, 20

**Other Authorities**

U.S. Constitution, Art. I, Sec. 8, Cl. 8 ........................................................4

H. Rep. No. 1476, 94th Cong., 2d Sess. (1976)...........................10, 14, 19

*Compendium of the U.S. Copyright Office Practices, 2d Edition*
(1984)..........................................................................................................26

*Compendium of the U.S. Copyright Office Practices, 3d Edition*
(2014)..................................................................................22, 23, 25, 26

Aoki, "Distributive and Syncretic Motives in Intellectual Property
Law (with Special Reference to Coercion, Agency, and
Development)," 40 U.C. Davis L. Rev. 717 (2007).........................20

Balganesh, "The Obligatory Structure of Copyright Law: Unbundling
  the Wrong of Copying," 125 HARV. L. REV. 1664 (2012) .................................19

Hattenbach & Glucoft, "Patents In An Era Of Infinite Monkeys And
  Artificial Intelligence," 19 STAN. TECH. L. REV. 32 (2015) .................................6

Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT
  § 5.01[A] (2015) .............................................................................................5, 6

Miller, "Copyright Protection for Computer Programs, Databases, and
  Computer—Generated Works: Is Anything New Since CONTU?,"
  106 HARV. L. REV. 977 (1993) ....................................................................21, 22

Sterk, "Rhetoric and Reality in Copyright Law," 94 MICH. L. REV.
  1197 (1996) ......................................................................................................15

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of California

("district court") has subject matter jurisdiction over this copyright infringement.

28 U.S.C. §§ 1331 and 1338(a). The district court dismissed the complaint with

prejudice for lack of standing under the Copyright Act and entered judgment on

February 18, 2016. This Court has jurisdiction over the current appeal from the

district court's final order. 28 U.S.C. § 1291. Notice of appeal was timely filed in

accordance with FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUE FOR REVIEW

Whether the district court erred in concluding that, because Congress did not

*expressly* grant standing to animals to sue under the Copyright Act of 1976, 17

U.S.C. § 101 *et seq.*, Plaintiff lacked standing as a matter of law to bring claims

under the Copyright Act.

## STATEMENT OF THE CASE

### A.      Nature of the Case

This case presents an issue of first impression: Whether human authorship is

required for protection under the Copyright Act. Plaintiff Naruto, a seven-year-old

crested macaque, took multiple photographs of himself (the "Monkey Selfies")

using defendant David Slater's camera. [Excerpts of Record ("ER") 20] There is

no dispute that Naruto took the photographs spontaneously and without human

9840675

assistance. In every practical (and definitional) sense, he is the "author" of the works.

Defendants argue that animals have no standing under the statute—that they cannot be "authors." Had the Monkey Selfies been made by a human using Slater's unattended camera, that human would undisputedly be declared the author and copyright owner of the photographs. Nothing in the Copyright Act limits its application to human authors. The U.S. Supreme Court has long given the constitutional term "Authors" the broadest possible meaning. *See Burrow-Giles Lithographic Co. v. Sarony ("Sarony")*, 111 U.S. 53, 58 (1884)). On its face, the Copyright Act applies to anyone who is an "author," including Naruto; that is, the "originator; maker; [or] one who completes a work." *Id.*

Naruto therefore properly seeks a declaratory judgment that he has the right to own and benefit from the copyright in the Monkey Selfies in the same manner and to the same extent as any other author, as well as other relief.

## B.    Procedural History

Plaintiff filed the complaint against defendants David J. Slater, Wildlife Personalities, Ltd., and Blurb, Inc. (collectively, "Defendants"), on September 21, 2015. Defendants moved to dismiss for lack of standing and failure to state a claim. [ER 12] Without reaching the merits of the case, and despite recognizing the

precedent set by this Court that animals may be granted standing under Article III of the Constitution, the district court dismissed the Complaint on the sole ground that the Copyright Act does not expressly grant standing to animals. [ER 14].

## STATEMENT OF FACTS

Naruto is a free, autonomous seven-year old[1] crested macaque, living on the island of Sulawesi, Indonesia. [ER 20] In or around 2011, Naruto picked up an unattended camera brought into Naruto's habitat by defendant Slater. [*Id.*] Using that camera, Naruto took a series of photographs of himself through a series of purposeful and voluntary actions that were entirely unaided by Slater. [*Id.*] The Monkey Selfies quickly became internationally famous. Seeking to capitalize on their popularity, Defendants published and sold a book containing Naruto's Monkey Selfies, including one on its cover. [ER 20–21] In that book and elsewhere (though tellingly not in their motions to dismiss), Defendants claimed to own copyrights to the Monkey Selfies, even as they admitted that Naruto created the photographs without human assistance. [*Id.*]

Though he is a free animal, Naruto is not unknown to humans. Naruto is part of a small population of Sulawesi crested macaques who have been studied for nearly a decade by, among others, Dr. Antje Engelhardt, a German primatologist

---

[1] The Complaint alleges that Naruto is six years old. He turned seven on November 23, 2015, after the complaint was filed. [ER 20]

- 3 -

and ethologist. [ER 23] Dr. Engelhardt and her team have known, monitored, and studied Naruto since his birth. [*Id.*] Based upon their personal knowledge of Naruto, she and her team were able to recognize Naruto as both the author and subject of the Monkey Selfies. Dr. Engelhardt and People for the Ethical Treatment of Animals ("PETA") share a commitment and dedication to Naruto and the preservation of both his habitat and his rights. [*Id.*] Pursuant to that commitment, this lawsuit was filed on Naruto's behalf. *See* FED. R. CIV. P. 17(c).

## SUMMARY OF ARGUMENT

The Constitution authorizes Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. CONST. art. I, § 8, cl. 8. Neither the Copyright Clause nor the Copyright Act contains on its face a limitation solely to authors with human attributes or characteristics. The district court erred in carving out such an exemption here. It is not necessary—indeed it is antithetical to the purpose of the Copyright Act—to specify who can be an author, as that question is determined by looking at the attributes of the work sought to be protected. The Copyright Act protects "original works of authorship," not works of "human authors." *See* 17 U.S.C. § 102. Moreover, the Monkey Selfies have all the attributes required for protection under the Copyright Act. To exempt them from

protection on the sole ground that Congress did not specify that animals can be authors assumes erroneously that such specification would have been necessary.

Since enacting the Copyright Act of 1790, Congress and the Supreme Court have instructed that the copyright laws should be interpreted liberally in order to safeguard the "general benefits derived by the public" from works of authorship. *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 429 (1984). Because copyright protection exists primarily to advance society's interest in increasing creative output, it follows that the protection under the Copyright Act does not depend on the humanity of the author, but on the originality of the work itself. The Copyright Act was intended to be broadly applied and to gradually expand to include new forms of expression unknown at the time it was enacted. Congress and the courts have explained that copyright protection is critical to ensuring the general public has access to works of authorship. The public places value in these works—and, self-evidently, so do the Defendants.

While the facts present a question of first impression, the issue is not a trivial one—a point underscored by the "rivers of ink [that] are spilt" on the related question of whether computers can be considered authors for copyright purposes. Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 5.01[A] (2015). Whether works independently created by artificially intelligent computers are entitled to copyright protection is, as Professor Nimmer notes, a question that may

- 5 -

soon demand an answer. *Id.*[2] The issue now before this Court is therefore of considerable moment to the overarching question of whether the public is entitled to the benefits derived from works of authorship where, as here, the author is not human.

Given the plain reading of the statute, the purposes of the Copyright Act, and Defendants' own acknowledgment that copyright protection is necessary under the circumstances, that question should be answered in the affirmative.

## STANDARD OF REVIEW

Questions of standing are reviewed *de novo. Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015) ("We review *de novo* a district court's determination on the issue of standing."); *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1286 (9th Cir. 2013) ("We review standing, ripeness, and mootness *de novo*."); *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156–57 & n.3 (9th Cir. 2008) ("We review *de novo* dismissals under Rules 12(b)(1) and 12(b)(6).").

---

[2] "We have entered an era in which computers are not just crunching numbers but generating works of a sort that have historically been protected as 'creative.' … It remains to be seen whether equitable considerations will persuade courts to prevent owners of works generated by brute computational force (and therefore would not be otherwise copyrightable) from piggybacking on the success of identical works made popular by others, or whether legislative intervention in the copyright arena will be required to address these recent technological advances." Hattenbach & Glucoft, "Patents In An Era Of Infinite Monkeys And Artificial Intelligence," 19 STAN. TECH. L. REV. 32, 33-34 (2015).

Underlying factual findings relevant to issues of standing are reviewed for clear error. *See Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008).

On a motion to dismiss, "[a]ll factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to plaintiffs.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). When assessing standing challenge, "the court must be careful not to decide the questions on the merits for or against plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 924 (D.C. Cir. 2008). Where, as here, a complaint raises novel legal questions, the Court "should be especially reluctant to dismiss on the basis of the pleadings." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (citing *Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985)).

## ARGUMENT

### A. The Copyright Act grants standing to anyone who creates an "original work of authorship"

The Copyright Act applies to "original works of authorship fixed in a tangible medium of expression, now or later developed …." 17 U.S.C. § 102(a). The Copyright Act specifies who has standing to sue: "The legal or beneficial

***owner*** of an exclusive right under a copyright is entitled … to institute an action for any infringement …." *Id.* § 501(b) (emphasis added). Thus, standing is given to any copyright "owner." *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir.), *cert. denied*, 546 U.S. 827 (2005) ("The meaning of that provision appears clear. To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright.'"); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 276 (S.D.N.Y. 2014) ("Section 501(b) of the Copyright Act establishes who may sue for infringement of a copyright.").

The Copyright Act also defines "owner," at least initially: "Copyright in a work protected under this title vests initially in the ***author*** or ***authors*** of the work." *Id.* at § 201(a) (emphasis added). Thus, to be an "owner" and, by extension, to have standing, the plaintiff need only allege to be the "author" of a disputed work. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("The Copyright Act of 1976 provides that copyright ownership 'vests initially in the author or authors of the work.'"); *DC Comics v. Towle*, 802 F.3d 1012, 1024 (9th Cir.), *cert. denied*, 136 S.Ct. 1390 (2015) ("Accordingly, the ***author*** of an underlying work is entitled to sue a third party who makes an unauthorized copy ….") (emphasis added).

- 8 -

Notably, the Copyright Act does not define "author." Nor was such a definition necessary. The term "author" comes directly from the Constitution itself, which grants Congress the authority to protect the "Writings" of "Authors." *See Goldstein v. California*, 412 U.S. 546, 561 (1973) (citing U.S. CONST. Art. I, § 8). As a result, Congress did not have to define the term. Long before the Copyright Act of 1976, the Supreme Court interpreted the constitutional meaning of "author" in its broadest possible sense: "While an 'author' may be viewed as an individual who writes an original composition, the term, in its constitutional sense, has been construed to mean an 'originator,' 'he to whom anything owes its origin.'" *Goldstein*, 412 U.S. at 561 (quoting *Sarony*, 111 U.S. at 58). "As a general rule, the author is the party who actually creates the work …." *Cmty. for Creative Non-Violence*, 490 U.S. at 737; *see also U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012) ("Under § 201(a) of the Copyright Act, copyright ownership 'vests initially in the author or authors of the work,' which is generally the creator of the copyrighted work."). In passing the Copyright Act, Congress merely adopted this judicial definition of "author."[3]

---

[3] In contrast, the patent statutes define "inventor" to mean "the *individual* … who invented or discovered the subject matter of the invention." 35 U.S.C. § 100(f) (emphasis added). The statutes also describe joint inventors as "two or more *persons*" who conceive of the invention. 35 U.S.C. § 116(9) (emphasis added).

- 9 -

Likewise, the Copyright Act did not explain how to identify the author of a photograph—courts had already done that as well. Over a century ago, in *Sarony*, the Supreme Court considered whether the "author" of a photograph was the individual who physically takes the picture or the individual who makes an image out of the negative. To answer this question, the Court articulated the standard that an author is "he to whom anything owes its origin." 111 U.S. at 58. Applying that standard to a photograph, the Court concluded that the author is the one "'who effectively is as near as he can be the cause of the picture which is produced.'" *Sarony*, 111 U.S. at 61 (quoting *Nottage v. Jackson*, 11 Q.B.D. 627 (1883)). In other words, it is typically the one "who sets it up and snaps the shutter." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232 (9th Cir. 2000).

Here, Naruto has sufficiently alleged that he is the one to whom the Monkey Selfies "owe" their origin. Thus, Naruto has alleged that he is the author of the Monkey Selfies, and, by extension, the owner of their copyrights.

Despite meeting all statutory requirements for standing, the district court concluded that Naruto cannot state a claim under the Copyright Act because the statute does not *expressly* grant standing to animals. But that reasoning misses the mark: Congress did not provide an "express" definition at all. By its silence, Congress accepted the broad constitutional notion of authorship and the judicial construction that had been in place since at least the 19th century. *See* H. Rep. No.

- 10 -

1476, 94th Cong., 2d Sess. 51 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5664. ("The phrase 'original works of authorship,' **which is purposely left undefined**, is intended to incorporate without change the standard of originality established by the courts under the present copyright statute.") (emphasis added); *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 909 n.7 (2d Cir. 1980) (quoting same). Naruto easily meets this definition.

In reaching its conclusion, the district court relied on this Court's opinion in *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004), which suggested that animals lack standing absent an express authorization by statute. In *Cetacean*, this Court concluded that animals lack standing to sue the United States under the Endangered Species Act, the Administrative Procedures Act, and other statutes, because standing under those statutes was not "expressly" granted to animals. However, the statutes at issue in *Cetacean* differ from the Copyright Act in fundamental ways. First, the statutes at issue in *Cetacean* represented a waiver of the United States' sovereign immunity, and such waivers, unlike the Copyright Act, are narrowly construed. *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) ("[T]he Government's consent to be sued must be construed strictly in favor of the sovereign ….") (internal quotations omitted). Second, unlike the Copyright Act, the statutes at issue in *Cetacean* actually define who has standing. *See Cetacean*, 386 F.3d at 1175 (addressing the definition of "person" under the

statute). In contrast, the Copyright Act makes no attempt to define those who have standing. Thus, it is impossible to limit the Copyright Act to only those who were "expressly" granted standing. Doing so would effectively exclude everyone.

Naruto has sufficiently alleged that he is the author of the Monkey Selfies. Naruto alleges, and Defendants admit, that Naruto was responsible for creating the Monkey Selfies. [ER 20] Naruto further alleges that no human intended to, or did in fact, assist in creating the Monkey Selfies. [*Id.*] Thus, Naruto has sufficiently alleged that he is the author of the Monkey Selfies—that he is their "originator," the one "to whom" the photographs owe their "origin." Naruto is not required to allege anything else to have standing in this Court.

**B.      "Authorship" under the Copyright Act is not limited to humans**

The Copyright Act recognizes that not all authors will be human. Most prominently, it provides that if a work is created in an employment relationship, then "the employer … is considered the author." 17 U.S.C. § 201(b). This proposition is so firmly established in the jurisprudence that most copyright cases

- 12 -

to reach the United States Supreme Court have been filed by authors who are non-humans, ranging from motion picture studios[4] to music publishers[5] to others.[6]

It is important to appreciate that the corporate "employer" which qualifies as the copyright "author" is not merely the successor to a nominal human author. Under this statute, the title "author" does not begin with the creator and then pass to the employer; rather, the rights of authorship vest initially in the corporation itself. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1145 (9th Cir. 2003) ("[T]he Act does not envision a work-for-hire arrangement as an "assignment," but rather provides for *initial vesting* of all rights of authorship in the person for whom the work was prepared.") (emphasis in original).[7] Thus, when the employer is a corporation, it is the author under the statute. *See Playboy*

---

[4] *E.g., ABC, Inc. v. Aereo, Inc.*, __ U.S. __ , 134 S.Ct. 2498 (2014); *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984).

[5] *E.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

[6] *E.g*., *Quality King Distribs., Inc. v. L'Anza Research Int'l, Inc.,* 523 U.S. 135, 138 (1998) (arising out of case in which "a California corporation engaged in the business of manufacturing and selling shampoos, conditioners, and other hair care products [and] has copyrighted the labels that are affixed to those products"); *Cmty. for Creative Non-Violence*, 490 U.S. at 733 (appeal arising from trial court ruling that author of sculpture was "nonprofit unincorporated association dedicated to eliminating homelessness")

[7] This rule stands in marked opposition to patent standards. *See New Idea Farm. Equip. Corp. v. Sperry Corp*., 916 F.2d 1561, 1566 n.4 (Fed. Cir. 1990) (explicitly barring legal entities from obtaining inventorship status because "*people* conceive, not companies") (emphasis added).

- 13 -

*Enterprises Inc. v. Dumas*, 53 F.3d 549, 565 (2d Cir.), *cert. denied*, 516 U.S. 1010 (1995) ("Playboy is the 'author' of those works and owns their copyrights"); *Imperial Toy Corp. v. Goffa Int'l Corp.*, 988 F. Supp. 617, 620 (E.D.N.Y. 1997) (Chinese entity was an "author" under Copyright Act because statute does not distinguish based on "the nationality of the author of the work").

The Copyright Act also specifically defines the duration of copyright protection for "anonymous works," 17 U.S.C. § 302(c), *i.e.*, works for which "***no natural person*** is identified as author." 17 U.S.C. § 101 (emphasis added). Such anonymous works may be registered without ever revealing the author's identity. *See* 17 U.S.C. § 409(3); *cf. Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 92 (2d Cir. 2014) ("An 'orphan work' is an out-of-print work that is still in copyright, but whose copyright holder cannot be readily identified or located."). Thus, Congress explicitly bestowed copyrights even when the author is not identified, leaving no statutory impediment for a human to register an anonymous work on behalf of an animal author.

That no prior case has sought copyright protection on behalf of an animal is hardly dispositive. Congress explicitly noted that the history of copyright law "has been one of gradual expansion in the types of works accorded protection." *See* Notes of Committee on the Judiciary, H. Rep. No. 1476, 94th Cong., 2d Sess. 51 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5664. "Authors are continually

finding new ways of expressing themselves, but it is impossible to foresee the forms that these new expressive methods will take." *Id.* Congress enshrined this principle into the Copyright Act itself, explicitly including protections for "original works … ***now or later developed***." 17 U.S.C. § 102(a) (emphasis added). This historical context and Congress's clear legislative intent is a "critical tool of … interpretation" to "determine the public understanding of a legal text in the period after its enactment." *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008).

### C.     The Copyright Act must be interpreted broadly to achieve its purpose

"The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (alteration in original); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("It is evident that the monopoly granted by copyright actively served its intended purpose of inducing the creation of new material of potential historical value.").

"The immediate effect of our copyright law is to secure a fair return for an author's creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp.,* 422 U.S. at 156; *see also United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 158 (1948) ("It is said that reward to the author or artist serves to induce release to

the public of the products of his creative genius."); Sterk, "Rhetoric and Reality in Copyright Law," 94 MICH. L. REV. 1197, 1203 (1996) ("[I]t is incentive language that pervades the Supreme Court's copyright jurisprudence.").

To accomplish this end, Congress and the Supreme Court have interpreted the terms "Writings" and "Authors" as broadly as possible. "These terms have not been construed in their narrow literal sense but, rather, with the reach necessary to reflect the broad scope of constitutional principles." *Goldstein*, 412 U.S. at 561.

For example, after photographs were invented, the Supreme Court had no doubt they were "Writings," even if not actually written, because the term "Writings" is "susceptible of a more enlarged definition." *Sarony*, 111 U.S. at 58. "The only reason why photographs were not included in the extended list in the act of 1802 is, probably, that they did not exist, as photography, as an art, was then unknown." *Id.* Failing to recognize animals as "authors"—even if animal-created art was "unknown" until recently—would impermissibly curtail the broad scope of the Copyright Act and inhibit its constitutionally mandated goals.

Yet if animals cannot be authors, there is no copyright protection for their works. 17 U.S.C. §§ 102(a), 201(a). This is fundamentally at odds with the fact that "[c]opyright protection extends to *all* 'original works of authorship fixed in any tangible medium' of expression." *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1013 (8th Cir. 2006) (emphasis added); *see also Bell Atl. Bus. Sys. Servs.,*

- 16 -

*Inc. v. Hitachi Data Sys. Corp.*, No. C 93–20079 JW, 1995 WL 836331, at *3 (N.D. Cal. Dec. 14, 1995) ("Copyright protection extends to ***all*** original works of authorship fixed in any tangible medium of expression") (emphasis added). It is also antithetical to the public interest, and hence, the stated purpose of the Copyright Clause. There is no doubt that the general public has an interest in works of art, regardless of their authors' characteristics or attributes. The tremendous interest in Naruto's work and Defendants' attempts to exploit that interest (and to bar others from doing so) only buttresses this conclusion.

In the proceedings below, Defendants argued that animals cannot hold copyrights because animals do not respond to the financial incentives of copyright ownership. But standing under the Copyright Act does not require that the author intend to publish the work, or to profit from those works. *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1178 (9th Cir. 2012) ("It may seem paradoxical to allow copyright to be obtained in secret documents, but it is not. Federal copyright is now available for unpublished works that the author intends to never see the light of day."); *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001) ("Even an author who had disavowed any intention to publish his work during his lifetime was entitled to protection of his copyright."). Nor does standing require an author to derive any monetary gain from his work. *Worldwide Church of God*, 227 F.3d at

9840675

- 17 -

1115 ("That right is not diminished or qualified by the fact that [appellant] is a not-for-profit organization and does not realize monetary benefit from the use of the copyrighted work."). Thus, in *Monge*, this Court held that copyright protection extended to wedding photographs that were taken solely "for the couple's private use," even though the photographs would have never been published or earned a single dollar but for the actions of the infringing party. *Id.*[8]

Moreover, it is irrelevant that Naruto cannot exploit his copyright without the assistance of humans. Human children—and even certain incapacitated adults—cannot reproduce or sell copyrighted works without the assistance of others. But they are still "authors" under the Copyright Act. *See generally* Notes of Committee on the Judiciary, H. Rep. No. 1476, 94th Cong., 2d Sess. 126 (1976),

---

[8] As Justice Holmes pointed out in *White-Smith Music Publishing Co. v. Apollo Co.*, copyright embraces the "right to exclude" others from interference, "not directed to an object in possession or owned, but is *in vacuo*, so to speak…. It is a prohibition of conduct remote from the persons or tangibles of the party having the right." 209 U.S. 1, 18-19 (1908) (Holmes, J, concurring). Copyright law focuses not on a right that actively enables the exclusive use of the expression, but rather forbidding all others from copying the expression; that is, a "duty not to copy." Balganesh, "The Obligatory Structure of Copyright Law: Unbundling the Wrong of Copying," 125 Harv. L. Rev. 1664, 1670 (2012). By placing the focus on rectifying the harm caused by the infringer's duty not to copy, copyright law insures that the public's grant of rights to an author—not just the private benefits accorded to the author—are to be treated with respect. *See e.g., Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012) ("Fundamentally, proving the basic tort of infringement simply requires the plaintiff to show that the defendant had an actual opportunity to copy the original … and that the two works share enough unique features to give rise to a breach of the duty not to copy another's work.").

- 18 -

*reprinted in* 1976 U.S.C.C.A.N. 5659, 5741(referencing "the legally appointed guardians or committees of persons incompetent to sign because of age or mental disability"); *Mason v. Jamie Music Pub. Co.*, 658 F. Supp. 2d 571 (S.D.N.Y. 2009) (addressing copyright to song lyrics written by a minor). Because children cannot assert their rights without the help of others, they are permitted, as here, to present their case through another party acting on their behalf. *See* FED. R. CIV. P. 17(c).

No authority supports the district court's judicially created exception for animal-created works. The fact that existing case law contains a lacuna in recognizing ownership for this category scarcely leads to the result that protection must be denied. The district court erroneously resolved this question of first impression, as is shown below.

## D. Animal authorship under the Copyright Act is an issue of first impression

The fact that copyright ownership by an animal has not been previously asserted does not mean that such rights cannot be asserted: "If rights were defined by who exercised them in the past, then received practices could serve as their own

continued justification and new groups could not invoke rights once denied."

*Obergefell v. Hodges*, __ U.S. __ , 135 S.Ct. 2584, 2602 (2015).[9]

As the Supreme Court recognized when it first considered whether the "new" technology of photography was a "Writing," those who came before us used the language they did because photography (like animal-created art) "was then unknown." *Sarony*, 111 U.S. at 58. Since no previous case has considered the possibility of an animal author, it is hardly surprising that previous cases would refer to authors as humans. As a corollary, any reference to humans is mere dicta and does not foreclose a finding of animals as authors if the issue were presented. *Cetacean*, 386 F.3d at 1173 ("A statement is dictum when it is made during the course of delivering a judicial opinion, but … is unnecessary to the decision in the case and is therefore not precedential.").

Indeed, the only time that this Court has ever considered the possibility of a non-human author, it declined to answer the question:

> The copyright laws, of course, do not expressly require "human" authorship, and considerable controversy has arisen in recent years over the copyrightability of computer-generated works. We agree with [the appellee] however, that it is not creations of divine beings that the

---

[9] Before the Civil War, the U.S. Patent Office held that inventions by slaves could not be patented by anyone because slaves could not own property and slaveholders were not the inventors. *See* Aoki, "Distributive and Syncretic Motives in Intellectual Property Law (with Special Reference to Coercion, Agency, and Development)," 40 U.C. DAVIS L. REV. 717, 801 (2007).

copyright laws were intended to protect, and that in this case some element of human creativity must have occurred in order for the Book to be copyrightable. At the very least, for a worldly entity to be guilty of infringing a copyright, that entity must have copied something created by another worldly entity.

*Urantia Foundation v. Maaherra*, 114 F.3d 955, 958 (9th Cir. 1997) (citing Miller,

"Copyright Protection for Computer Programs, Databases, and Computer—

Generated Works: Is Anything New Since CONTU?," 106 HARV. L. REV. 977

(1993)). Notably, when presented with the opportunity to do so, this Court

expressly declined to hold that only humans can be authors. Rather, this Court

merely observed that authorship by celestial beings cannot be proven, and that

even celestially inspired words need "worldly" hands to record them. *Id.* Of course,

unlike heavenly revelations that require human hands to write them, human hands

are not required to take a photograph. Thus, insofar as the issue of non-human

authorship has been considered by this Court, it remains an open question. The

only requirement articulated by this Court so far is that the "author" be of this

world. *See id.* And Naruto certainly meets that requirement.[10]

### E.   The district court erroneously relied on the *Compendium*

In finding that animals nevertheless lack standing to sue under the Copyright

Act, the district court relied on the *Compendium of the U.S. Copyright Office*

---

[10] Defendant Slater publicly claims to hold the copyrights to the Monkey Selfies. [ER 20] By conceding the copyrightability of the works, the only remaining question is identifying the author.  Here, the only possible author is Naruto.

*Practices, 3d Edition* (2014) ("*Compendium*"), which states that human authorship

is a requirement for registering a copyright with the U.S. Copyright Office. The

district court's reliance on the *Compendium* was misplaced. As an initial matter,

because the Monkey Selfies are foreign works, they do not require registration with

the Copyright Office. *See* 17 U.S.C. §§ 101 and 411(a). Moreover, the

*Compendium* is not binding on the courts—and, indeed, does not even provide

"guidance" because it does not explain how the Copyright Office reached the

conclusion that animal-created works cannot be registered. The two cases cited in

the *Compendium* fall woefully short of supporting that conclusion.

First, the *Compendium* cites *Trade-Mark Cases*, 100 U.S. 82, 94 (1879),

which held that copyright law protects "the fruits of intellectual labor" that "are

founded in the creative powers of the mind." Second, it cites *Sarony*, which held

that copyright law is limited to "original intellectual conceptions of the author."

111 U.S. at 58. Neither case held, or even considered, whether a human mind is

necessary for copyright protection. Rather, those cases were addressing the

requirement that copyrightable works must be "original." *See id*. The Monkey

Selfies easily meet that requirement, as the threshold for originality is minimal:

"Originality in this context means little more than a prohibition of actual copying."

*North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992).

There is no suggestion that Naruto's photographs were copied from any third party.

9840675

- 22 -

They are original—otherwise they never would have become so popular. Thus, by concluding that animal-created works cannot be registered, the *Compendium* not only failed to provide supporting analysis, it also reached the wrong conclusion, which in any event is not binding on this Court.

Moreover, federal courts have suggested for over a century that every photograph will—by its very nature—be sufficiently original because no two photographs will ever be exactly the same. In *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903), the Supreme Court held that chromolithographs, which depict real scenes and people as photographs do, were copyrightable because they were "the personal reaction of an individual upon nature. Personality always contains something unique." *Id.* at 250. Building on *Bleistein*, Judge Learned Hand considered it likely that every photograph would be copyrightable because "no photograph, however simple, can be unaffected by the personal influence of the author, and no two will be absolutely alike." *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (2d Cir. 1921), *cert. denied,* 259 U.S. 581 (1922). More recently, this Court observed that Judge Hand's comment "has become the prevailing view" of modern copyright law, leaving it likely that "all photographs are sufficiently original by their nature to merit copyright protection." *Los Angeles News Service v. Tullo*, 973 F.2d 791, 793 (9th Cir. 1992); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074 (9th Cir.

- 23 -

2000) ("Indeed, the idea that photography is art deserving [copyright] protection reflects a longstanding view of Anglo–American law.").

The district court departs from the well-established norm that every photograph is subject to copyright protection. *See Ets-Hokin*, 225 F.3d at 1073 (holding that photos of vodka bottles were protected by copyright given "the low threshold for originality under the Copyright Act, as well as the longstanding and consistent body of case law holding that photographs generally satisfy this minimal standard"); *see also Bleistein*, 188 U.S. at 250 ("The least pretentious picture has more originality in it than directories and the like, which may be copyrighted.")

The *Compendium* itself acknowledges that it "does not override any existing statute or regulation. The policies and practices set forth in the *Compendium* do not in themselves have the force and effect of law and are not binding upon the Register of Copyrights or U.S. Copyright Office staff." *Compendium* at p. 2. The Supreme Court has held that lower courts may consider the interpretations set forth in administrative manuals, such as the *Compendium*, only to the extent that such documents "have the power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (internal citations omitted). "The weight of [the agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade …."

9840675

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (stating that deference to agency opinion varies with "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position"). Furthermore, "the Copyright Office has no authority to give opinions or define legal terms and its interpretation on an issue never before decided should not be given controlling weight." *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 946–47 (2d Cir. 1975) (citing *DeSylva v. Ballentine*, 351 U.S. 570, 577–78 (1956)). And, here, it is undisputed that animal authorship is an "issue never before decided."

Thus, the district court should have been especially wary of seeking guidance from the *Compendium*. *See id.* Rather, the district court should have followed the approach taken by this Court in *Urantia* and eschewed the ill-reasoned guidance of the *Compendium* on the issue of non-human authorship. The 1984 version of the *Compendium* declared that "for a work to be copyrightable, it must owe its origin to a human being." *Compendium of the U.S. Copyright Office Practices, 2d Edition* § 202.02(b) (1984). Despite this pronouncement, this Court in *Urantia* ignored the *Compendium*, observing copyright laws, of course, do not expressly require 'human' authorship …." 114 F.3d at 958.

It is evident that the drafters of the *Compendium* gave the question of animal authorship little consideration and no reasoned explanation to support their

- 25 -

conclusions. Indeed, the only legal test referenced by the *Compendium* is that works must be "original." Yet there is no doubt the Monkey Selfies are original. Because the *Compendium* fails to explain how it reached its conclusion, it is not entitled to any weight. *See, e.g., Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 661–62 (M.D. Penn. 2005) (because letters from the Copyright Office did not include a rationale or explanation for the agency's construction of the statute, "their value as persuasive authority, and the deference owed to the agency's interpretation, is thus substantially limited").

Moreover, the *Compendium*'s conclusion is inconsistent with the plain language of the Copyright Act, the breadth with which it is interpreted, and the constitutional purposes for which it was enacted. Thus, the Copyright Office's baseless refusal to register animal-created works is entitled to no weight.

## CONCLUSION

For these reasons, Plaintiff respectfully urges the Court to reverse the district court and remand this case for further proceedings consistent with Naruto's standing to pursue a declaration of his rights under the Copyright Act.

Dated:  July 28, 2016

IRELL & MANELLA LLP

By:   /s/ David A. Schwarz

Attorneys for Plaintiff–Appellant Naruto,
by and through his Next Friend, People
for the Ethical Treatment of Animals, Inc.

*Of Counsel:*

Jeffrey S. Kerr, Esq.
General Counsel
PETA FOUNDATION

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28–2.6, Plaintiff-Appellant states that no other

cases in this Court are deemed related.

Dated:  July 28, 2016

IRELL & MANELLA LLP

By:   /s/ David A. Schwarz

Attorneys for Plaintiff–Appellant Naruto,
by and through his Next Friend, People
for the Ethical Treatment of Animals, Inc.

*Of Counsel:*

Jeffrey S. Kerr, Esq.
General Counsel
PETA FOUNDATION

| 9th Circuit Case Number(s) | 16-15469 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | Jul 28, 2016 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ David A. Schwarz |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CERTIFICATE OF SERVICE
## When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |