**Case No. 16-15469**

IN THE

# United States Court of Appeals
# for the Ninth Circuit

NARUTO, A CRESTED MACAQUE, BY AND THROUGH HIS NEXT FRIENDS,
PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,

PLAINTIFF-APPELLANT,

—v.—

DAVID JOHN SLATER, WILDLIFE PERSONALITIES, LTD.,
AND BLURB, INC.,

DEFENDANTS-APPELLEES,

————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 3:15-CV-04324,
U.S. DISTRICT JUDGE WILLIAM H. ORRICK III

## BRIEF OF DEFENDANTS-APPELLEES DAVID JOHN SLATER AND WILDLIFE PERSONALITIES, LTD.

ANDREW J. DHUEY
456 Boynton Avenue
Berkeley, California 94707
(510) 528-8200

Attorney for Defendants-Appellees,
David John Slater and
Wildlife Personalities, Ltd.

25 August 2016

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.2 of the Federal Rules of Appellate Procedure, Defendant-Appellee Wildlife Personalities, Ltd., certifies that it is a private corporation that has no affiliation with any other corporation. It has no parent corporation, and no publicly-held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................... i

TABLE OF AUTHORITIES ......................................................... iv

INTRODUCTION ............................................................... 1

STATEMENT OF JURISDICTION ............................................... 2

COUNTERSTATEMENT OF THE ISSUES ................................. 3

STATEMENT OF THE RELEVANT FACT ............................... 3

SUMMARY OF ARGUMENT .................................................... 4

ARGUMENT:

    I.    The Court Should Affirm the District Court's Judgment of Dismissal for Lack of Standing ................................................ 5

        A.    Non-human Animals Lack Standing to Sue for Copyright Infringement... ............................................. 5

        B.    PETA Is Ineligible to Serve as Naruto's "Next Friend"... .......................................................... 8

    II.    The Court Should Order PETA to Pay Slater's Attorney Fees on Appeal.. ...................................................... 11

        A.    The Court Should Address Slater's Request for Fees on Appeal in Its Merits Decision... ............................... 11

        B.    Slater Is a "Prevailing Party" under Section 505........... 12

        C.    All of the Applicable Factors Favor Awarding Slater Recovery of His Attorney Fees on Appeal... ................. 14

1.      Dismissal for Lack of Standing Gives Slater the Greatest Degree of Success Possible ...................... 14

2.      PETA's Legal Positions Are Objectively Unreasonable and Its Appeal Is Frivolous ............. 15

3.      PETA's Motives in Filing, Prosecuting and Appealing This Action Were Improper. ............... 17

4.      The Need for Deterrence and Compensation Favors Awarding Slater His Attorney Fees on Appeal. .... 20

5.      PETA Is Not an Impecunious Litigant................... 23

    D.     Attorney Fees under Section 505 May Be Awarded Against "Next Friend" Litigants... ................................. 24

CONCLUSION ............................................................................ 26

STATEMENT OF RELATED CASES ....................................... 26

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT ...................... 27

PROOF OF SERVICE ................................................................. 28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 3

*Beer v. United States*, 361 Fed. Appx. 150 (Fed. Cir. 2010) ........................ 22

*Beer v. United States*, 696 F.3d 1174 (Fed. Cir. 2012) ................................ 22

*Berry v. Hawaiian Express Serv.*,
2006 U.S. Dist. LEXIS 78281 (D. Haw. 2006) ............................................ 18

*Bridgeport Music, Inc. v. WB Music Corp.*,
520 F.3d 588 (6th Cir. 2008) ....................................................................... 21

*Brittain v. Superior Court of Napa County*,
1993 U.S. Dist. LEXIS 8861 (N.D. Cal. 1993) ............................................ 25

*Cetacean Community v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ....................................... 5-8, 13, 15-19, 21-22

*Citizens to End Animal Suffering & Exploitation, Inc. v.
New England Aquarium*, 836 F. Supp. 45 (D. Mass. 1993) ........................... 5

*Coalition of Clergy v. Bush*, 310 F.3d 1153 (9th Cir. 2002) ............. 9, 11, 17

*Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*,
118 F.3d 245 (5th Cir. 1997) ....................................................................... 24

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003) ............... 14, 23

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ................................. 15, 17-20

*Fox v. Vice*, 563 U.S. 826 (2011) ................................................................ 25

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) ....................................... 9-10

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ............. 12, 14

*L.A. News Serv. v. Reuters TV Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998)...... 12

*Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705 (9th Cir. 2010) ..... 12

*Maljack Prods. v. Goodtimes Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996) .................................................................. 12, 19

*Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192 (9th Cir. 2001) ................ 9

*Mattel, Inc. v. Walking Mt. Prods.*,
2004 U.S. Dist. LEXIS 12469 (C.D. Cal. 2004) ......................................... 18

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
2014 U.S. Dist. LEXIS 60901 (N.D. Cal. 2014),
*rev'd*, 795 F.3d 997 (9th Cir. 2015).................................................... 12-13, 15

*Moody v. Smith (In re Moody)*, 105 B.R. 368 (Bankr. S.D. Tex. 1989) ...... 25

*O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007) ..... 24

*Petri v. Kestrel Oil & Gas Props., L.P.*,
2013 U.S. Dist. LEXIS 8695 (S.D. Tex. 2013) ........................................... 24

*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) ......................... 13

*Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587 (9th Cir. 1984)............. 12

*T.W. by Enk v. Brophy*, 124 F.3d 893 (7th Cir. 1997) ................................. 10

*Tilikum v. Sea World Parks & Entm't, Inc.*,
842 F. Supp. 2d 1259 (S.D. Cal. 2012) ................................................. 17-20

*Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980) ....................................... 12

## PROVISIONS OF THE U.S. CONSTITUTION

Article III ..................................................................... 10, 13, 22
Thirteenth Amendment .................................................... 17, 20

**STATUTES**

United States Code,
  Title 5, Section 702..................................................................... 6
  Title 16, Section 1532(13)............................................................ 6
  Title 16, Section 1540(g)(1)(A)...................................................... 8
  Title 17, Section 101................................................................... 7
  Title 17, Section 201................................................................... 7
  Title 17, Section 203................................................................... 7
  Title 17, Section 203(a)(2)(A)....................................................... 7
  Title 17, Section 304................................................................... 7
  Title 17, Section 505...................................................3, 11-14, 25-26

**ACTS OF CONGRESS**

Administrative Procedures Act.............................................5-7, 16
Copyright Act...........................................1, 6-8, 13, 20, 25
Endangered Species Act ....................................................5-8
Marine Mammal Protection Act ........................................5-7, 16
National Environmental Protection Act.................................5-7, 16

**RULES**

Federal Rule of Appellate Procedure 35(c) ............................. 21
Federal Rule of Appellate Procedure 35(e) ............................. 22
Federal Rule of Appellate Procedure 38................................. 17
Federal Rule of Civil Procedure 11 ..................................... 25
Ninth Circuit Rule 39.1-1.6 ............................................ 11

**OTHER AUTHORITIES**

Andrew Dhuey, The Great Haste and Less Milling of *Beer v. United States*,
Patently-O (Aug. 12, 2010), http://patentlyo.com/patent/2010/08/guest-post-
the-great-haste-and-less-milling-of-beer-v-united-states.html
(last visited Aug. 25, 2016)............................................... 22

Irell & Manella LLP, Irell Named to IP Hot List by *National Law
Journal*, June 2016, http://www.irell.com/news-item-470.html (last
visited Aug. 25, 2016)................................................... 19

PETA, Financial Reports, 2015 Financial Statement,
http://www.peta.org/about-peta/learn-about-peta/financial-report/ (last
visited Aug. 25, 2016)............................................................................23-24

PETA, UPDATE: 'Monkey Selfie' Case Brings Animal Rights Into Focus,
http://www.peta.org/blog/monkey-selfie-case-animal-rights-focus/, Jan. 6,
2016 (last visited Aug. 25, 2016).................................................................. 20

U.S. Chamber of Commerce Institute for Legal Reform, Lawsuit on
Behalf of Monkey Tops Poll of Year's Most Ridiculous Lawsuits,
http://www.instituteforlegalreform.com/resource/lawsuit-on-behalf-of-
monkey-tops-poll-of-years-most-ridiculous-lawsuits (last visited Aug.
25, 2016) ....................................................................................................... 1

Wall Street Journal Law Blog, Leading Questions: A Chat with PETA
Lawyer Jeff Kerr, June 6, 2016,
http://blogs.wsj.com/law/2016/06/06/leading-questions-a-chat-with-peta-
lawyer-jeff-kerr/ (last visited Aug. 25, 2016).............................................. 20

## INTRODUCTION

This case – winner of the U.S. Chamber of Commerce Most Ridiculous Lawsuit of 2015 award[1] – is poised to retain its title in 2016. Last year, an animal rights organization, People for the Ethical Treatment of Animals, Inc. ("PETA"), and a primatologist, Antje Engelhardt, Ph.D., walked into federal court, claimed to be a monkey's "next friends" and sued for infringement of the monkey's claimed copyright. To no one's surprise, the district court dismissed the case for lack of statutory standing.

On appeal, the crazy got crazier. Dr. Engelhardt withdrew from the case. That leaves PETA, which does not allege any relationship with the monkey, as the monkey's sole next friend.

Under controlling Ninth Circuit precedent, monkey see, monkey sue is not good law under *any* Act of Congress unless the legislative text plainly grants non-human animals standing to sue. It is undisputed that Congress never plainly said that non-human animals could have standing under the Copyright Act. And even if Congress had taken that extraordinary step of granting statutory standing to animals, separate Ninth Circuit precedent

---

[1] U.S. Chamber of Commerce Institute for Legal Reform, Lawsuit on Behalf of Monkey Tops Poll of Year's Most Ridiculous Lawsuits, http://www.instituteforlegalreform.com/resource/lawsuit-on-behalf-of-monkey-tops-poll-of-years-most-ridiculous-lawsuits (last visited Aug. 25, 2016).

requires that a next friend of a litigant have a significant relationship with the party it purports to represent.

There can be little serious debate that affirmance of the dismissal in this case is required under two separate lines of controlling authority. The only serious question on appeal is whether the Court should order PETA to pay the attorney fees on appeal of Defendants-Appellees. It should. PETA has unfairly and needlessly forced Defendants-Appellees to address legal positions that are wholly unreasonable under current law.

If PETA had wanted to assert a good faith challenge to existing law, it should have conceded that controlling authority required affirmance of the district court's dismissal. Then PETA, with little expenditure of party or judicial resources, could have filed a petition for en banc hearing, and possibly a petition for certiorari at the Supreme Court. That candid and forthright appellate approach would have been minimally burdensome to all involved.

## STATEMENT OF JURISDICTION

Defendants-Appellees David John Slater and Wildlife Personalities, Ltd. (henceforth, "Slater") agree with Plaintiff-Appellant's jurisdictional statement.

## COUNTERSTATEMENT OF THE ISSUES

1.    Whether a non-human animal can have statutory standing to sue for copyright infringement.

2.    Whether under 17 U.S.C. § 505, this Court should award Defendants-Appellees their reasonable attorney fees on appeal against Next Friend People for the Ethical Treatment of Animals, Inc.

## STATEMENT OF THE RELEVANT FACT

The only pertinent fact in this case is that Naruto is a monkey suing for copyright infringement.

PETA's factual allegations reveal its misunderstanding of how the Monkey Selfie photograph came to be, but those mistaken and immaterial allegations must be accepted as true in PETA's appeal of the pleading-stage dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the Court is curious to know the true story of the world-famous Monkey Selfie, it is available at Slater's website.[2]

Slater, an award-winning nature photographer, set up what became the Monkey Selfie in the course of several grueling days in an Indonesian jungle. Developing a keen understanding of their subjects is a critical skill

---

[2] http://www.djsphotography.co.uk/original_story.html

for any professional photographer, and that was vital here for Slater as he slowly built a trustful, friendly relationship with a group of crested macaque monkeys. Only a talented human photographer could have made the artistic choices involving camera lens width, positions and settings (e.g., predictive autofocus, motorwind, and flashgun). PETA insults all professional photographers with the suggestion that seeing your reflection in a lens and pressing a shutter button – by itself – entitles one to a copyright for the photograph, even when someone else made the critical artistic decisions that resulted in a photographic work adored by millions worldwide.

## SUMMARY OF ARGUMENT

The Court should affirm the dismissal for lack of standing because Congress did not plainly say that non-human animals can have standing to sue for copyright infringement. Additionally, the Court should affirm the dismissal because PETA, the only remaining purported "next friend" of Naruto, has alleged no relationship with him, as is required for "next friend" eligibility.

Also, the Court should order PETA to pay Slater's appellate-stage attorney fees, the amount thereof for the district to determine on remand. PETA's positions are objectively unreasonable and its motivation in prosecuting this action is improper. PETA should be deterred from bringing

~ 4 ~

such a frivolous action again, and Slater should be compensated for enduring this case.

## ARGUMENT

### I. The Court Should Affirm the District Court's Judgment of Dismissal for Lack of Standing.

#### A. Non-human Animals Lack Standing to Sue for Copyright Infringement.

"[I]f Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly." *Cetacean Community v. Bush*, 386 F.3d 1169, 1179 (9th Cir. 2004) (*quoting Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium*, 836 F. Supp. 45, 49 (D. Mass. 1993)). In *Cetacean Community*, this Court rejected the notion that non-human animals could have standing under four Acts of Congress: the Administrative Procedures Act ("APA"), the Endangered Species Act ("ESA"), Marine Mammal Protection Act ("MMPA"), and the National Environmental Protection Act ("NEPA"). 386 F.3d at 1176-79. None of the four Acts expressly excluded non-human animals from having statutory standing, but all four lacked the requisite plain statement indicating legislative intent to take that "extraordinary step" in federal jurisprudence. *Id.* at 1179.

The four statutes at issue in *Cetacean Community* differ on the question of standing. The APA provides judicial relief for a "person suffering legal wrong because of agency action". *Id.* at 1176 (*quoting* 5 U.S.C. § 702). The ESA grants standing to a "person", which is defined to include an "individual". *Id.* at 1177 (*quoting* 16 U.S.C. § 1532(13)). The MMPA and NEPA contain no explicit grant of standing. *Id.* at 1178-79. What they all have in common, though, is no explicit standing grant for non-human animals, and thus the plaintiff cetaceans failed to satisfy the plain statement standing requirement:

> But, as with the ESA, these cases *do not instruct us* to expand the basic definition of "person" beyond the definition provided in the APA. . . . *Absent a clear direction* from Congress in either the MMPA or the APA, we hold that animals do not have standing to enforce the permit requirement of the MMPA. . . . *[W]e see nothing* in either NEPA or the APA that would permit us to hold that animals who are part of the environment have standing to bring suit on their own behalf.

*Id.* at 1178-79 (emphasis added).

It is undisputed that Congress did not say "plainly" or give a "clear direction" that non-human animals have standing to sue under the Copyright Act. Indeed, much like with the ESA (*see Cetacean Community*, 386 F.3d at 1178-79), several provisions of the Copyright Act strongly indicate that an individual "author" must be a human. The "children" of an "author" can inherit certain rights, "whether legitimate or not" and that includes "children

legally adopted" by the author. *See* 17 U.S.C. §§ 101, 201, 203 and 304. An author's "widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest." § 203(a)(2)(A).

In sum, *Cetacean Community* set forth a straightforward test for non-human animal statutory standing, and the Copyright Act fails that test. If only all standing analyses were so easy.

At the district court, PETA argued that *Cetacean Community* involved a different statute than the Copyright Act, and as such is distinguishable. According to PETA, there is a critical difference between the ESA, which defines "person" to include an "individual", and the Copyright Act, which does not define "author". PETA Br. 11-12. PETA thus ignores how the APA does not define "person", and how the MMPA and NEPA do not even have explicit grants of statutory standing. The terms "person", "individual" and "author" could possibly include non-human animals. But the standing inquiry under *Cetacean Community* is not about possibilities; it is rather a simple question of whether the applicable Act of Congress plainly and clearly directs that non-human animals have standing to sue. *Id.* at 1179.

On appeal, PETA raises a new argument about *Cetacean Community*: "[T]he statutes at issue in *Cetacean* represented a waiver of the United States' sovereign immunity, and such waivers, unlike the Copyright Act, are narrowly construed." PETA Br. 11. But the holding in *Cetacean Community* is not at all based on or related to sovereign immunity or its waiver. Indeed, nowhere in *Cetacean Community* did this Court ever mention sovereign immunity or the canon of narrow construction for waivers of sovereign immunity. Moreover, the citizen-suit provision of the ESA provides that a "person may commence a civil suit . . . to enjoin any person, including the United States and any other governmental instrumentality or agency." 16 U.S.C. § 1540(g)(1)(A). It would be a strange interpretive result if the definition of the "person" entitled to sue under the ESA were construed broadly or narrowly, depending on whether the defendant is a public entity. Indeed, if PETA is right about this Court's *sub silentio* holding in *Cetacean Community*, a plaintiff could be a "person" and not a "person" in the same ESA case with both public and private defendants.

## B. PETA Is Ineligible to Serve as Naruto's "Next Friend".

"In order to establish next-friend standing, the putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2)

the next friend has some *significant relationship* with, and is truly dedicated to the best interests of, the petitioner." *Coalition of Clergy v. Bush*, 310 F.3d 1153, 1159-60 (9th Cir. 2002) (*quoting Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001)) (emphasis added).

Two putative next friends filed this action: PETA and Dr. Engelhardt, a primatologist who alleged that she has "known, monitored, and studied Naruto since his birth." ER 23. It may well be that the relationship with Naruto Dr. Engelhardt alleged is "significant" under *Coalition of Clergy v. Bush.* However, Dr. Engelhardt moved to withdraw from the case, informing the Court that she "will not continue as a next friend to Appellant in this proceeding."[3] This Court granted Dr. Engelhardt's motion, thus leaving PETA as Naruto's lone putative next friend.[4]

Unlike Dr. Engelhardt, PETA did not allege *any* relationship with Naruto, much less a significant one. That is a problem on appeal. PETA is now in a position very much like the ballot initiative defenders in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013): a party necessary for standing at the district court is not participating in the appeal. "[S]tanding must be met by persons seeking appellate review, just as it must be met by

---

[3] Docket entry no. 10, May 4, 2016.

[4] Docket entry no. 14, May 18, 2016.

persons appearing in courts of first instance." *Id.* at 2661 (internal quotation marks and citation omitted).

All of the Naruto relationship allegations in the Complaint concern Dr. Engelhardt; none involve PETA. *See* ER 21-23. PETA alleges, essentially, that it is an animal rights advocacy organization: "PETA is the largest animal rights organization in the world and operates, in part, under the principle that, as sentient beings, animals have rights that are or should be recognized in law and protected by courts." ER 23. PETA alleges no connection to Naruto, an Indonesian monkey who lives roughly 10,000 miles from PETA's headquarters in Virginia.

> [A]llowing a complete stranger to bring suit in their name as their next friend because they cannot sue on their own behalf would not violate Article III. But it might well offend the policy behind the requirement of standing, which is to confine the right to initiate and control federal court litigation to persons who have a concrete stake, rather than merely an ideological interest – passionate and motivating as such interests can be – in the litigation. Without such a limitation, not only would the federal courts be flooded by "cause" suits (really flooded), but people who did have concrete stakes in a litigation would often be thrust aside by the ideologues.

*T.W. by Enk v. Brophy*, 124 F.3d 893, 896 (7th Cir. 1997) (citations omitted).

However passionate PETA may be about establishing monkey standing for copyright infringement suits, that passion is not a "significant

relationship" with Naruto under *Coalition of Clergy v. Bush.* If it were, then hundreds and perhaps thousands of animal charities would be eligible next friends of Naruto, qualified to bring suit on his behalf.

## II.    The Court Should Order PETA to Pay Slater's Attorney Fees on Appeal.

Slater requests that should the Court affirm the judgment of dismissal, the Court also award him his attorney fees on appeal under 17 U.S.C. § 505. Slater's attorney fees on appeal should be awarded against PETA, the party responsible for this appeal.

### A.    The Court Should Address Slater's Request for Fees on Appeal in Its Merits Decision.

By stipulation, the parties have deferred the question of trial court-stage attorney fees until the resolution of this appeal. ER 8. It would thus be judicially efficient to award Slater his fees on appeal, but remand for the district court the determination of the amount of those fees. The district court can then determine the amount at the same time that it considers Slater's motion for fees incurred in district court proceedings.

The Court has discretion to defer the question of fees on appeal to the post-decision procedure set forth in Ninth Circuit Rule 39.1-1.6, but Slater respectfully submits that addressing his request in the merits opinion would

be more judicially efficient. Unlike cases where statutes or contractual provisions automatically entitle a prevailing party to attorney fees, Section 505 fee determinations are discretionary. An "important factor" in the Court's exercise of that discretion is the "objective reasonableness" of the losing party's legal positions. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016). Given the obvious unreasonableness of PETA's positions, this case is well-suited for consideration of an appellate-level fee award in a consolidated single opinion. Often the Court has taken this approach and awarded fees on appeal in merits opinions of cases, leaving the amount of the fee award to the district court's determination on remand.[5]

## B.     Slater Is a "Prevailing Party" under Section 505.

The Copyright Act permits courts to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 U.S. Dist. LEXIS 60901 (N.D. Cal. 2014), the district court considered whether a defendant who wins

---

[5] *See, e.g.*, *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 714 (9th Cir. 2010) (fees on appeal awarded to prevailing copyright case litigant under § 505; determination of amount for the district court on remand); *L.A. News Serv. v. Reuters TV Int'l, Ltd.*, 149 F.3d 987, 997 (9th Cir. 1998) (same); *Maljack Prods. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 890-91 (9th Cir. 1996) (same); *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 588-91 (9th Cir. 1984) (same in ERISA case); *Williams v. Alioto*, 625 F.2d 845, 850 (9th Cir. 1980) (same in civil rights action).

a dismissal for lack of standing is a "prevailing party" eligible for a fee award under Section 505. After a thorough review of applicable Ninth Circuit and Supreme Court authorities, including *Cetacean Community*, the district court concluded that because a dismissal for lack of statutory standing does not implicate a court's subject matter jurisdiction, it has the power to award attorney fees to the prevailing party under Section 505. *Id.* at *7-20. This Court reversed the district court on the merits in *Minden Pictures*, but without comment on the fees issue, which became moot after the reversal. 795 F.3d 997 (9th Cir. 2015).

This case presents the Court with an opportunity to clarify that a defendant who obtains a dismissal for lack of statutory standing is a "prevailing party" for purposes of a fee-shifting statute. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013) is not to the contrary, and even if it were, it would conflict with earlier Ninth Circuit precedents and a later Supreme Court decision. *See Minden Pictures,* 2014 U.S. Dist. LEXIS 60901 at *10-12, *17-18. Under *Cetacean Community*, Article III does not preclude *constitutional* standing for a monkey or any other non-human animal in federal court. 386 F.3d at 1175. Naturo lacks only *statutory* standing under the Copyright Act, and thus this Court has subject matter

jurisdiction over his claim of infringement, and it has discretion to award

Slater his attorney fees under Section 505.

### C.    All of the Applicable Factors Favor Awarding Slater Recovery of His Attorney Fees on Appeal.

In deciding whether to award fees, the Court should consider, among other things: the degree of success obtained on the claim; frivolousness and the objective reasonableness of the losing party's positions; the losing party's motivation and the need for compensation and deterrence. *Kirtsaeng*, 136 S. Ct. at 1985. Courts in the Ninth Circuit also consider "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003). All of these factors favor granting Slater his attorney fees on appeal.

### 1.    Dismissal for Lack of Standing Gives Slater the Greatest Degree of Success Possible.

Should the Court affirm the district court's dismissal on the ground that non-human animals lack statutory standing to sue for copyright infringement, Slater will have achieved the greatest degree of success possible in this litigation. Unlike cases where a lack of standing dismissal left open the possibility that the defendant would face an infringement suit

by another party,[6] affirmance here would mean that no monkey and no purported "next friend" of a monkey could ever have standing to sue Slater for copyright infringement of the Monkey Selfie, or any of Slater's other photographs.

### 2. PETA's Legal Positions Are Objectively Unreasonable and Its Appeal Is Frivolous.

Each of PETA's positions on appeal is objectively unreasonable under *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994). Taken together, PETA's arguments and omissions render its appeal frivolous.

Non-human animal statutory standing under *Cetacean Community* could not be simpler: if an Act of Congress plainly states that non-humans can have standing, they can; if not, they cannot have standing. 386 F.3d at 1179. That is exactly how the district court understood this Court's holding in *Cetacean Community*. ER 15-16. Nonetheless, PETA omits in its appeal any discussion of the plain statement standing requirement of *Cetacean Community*.

---

[6] *See, e.g., Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2014 U.S. Dist. LEXIS 60901 at *20-21 (N.D. Cal. 2014) (degree of success for publisher that won dismissal for lack of standing mitigated by fact that it remained subject to suit by individual photographers), *rev'd on other grounds*, 795 F.3d 997 (9th Cir. 2015).

Instead of addressing the express holding in *Cetacean Community*, PETA attempts to limit its reach to cases where sovereign immunity is at issue. PETA Br. 11. But this Court never even mentioned sovereign immunity in *Cetacean Community*; nor did it say or imply that it was construing statutory language narrowly. It is unreasonable to argue that binding precedent can be disregarded based on a doctrine and on a canon of construction never discussed in the applicable decision.

Moreover, PETA's claim that "the statutes at issue in *Cetacean* actually define who has standing" is patently false with regard to two of the Acts of Congress at issue: the MMPA and the NEPA. "As is true of the MMPA, no provision of NEPA explicitly grants any person or entity standing to enforce the statute, but judicial enforcement of NEPA rights is available through the APA." 386 F.3d at 1179 (citation omitted). PETA asserts a "contrast" in that "the Copyright Act makes no attempt to define those who have standing." PETA Br. 12. But there is no contrast whatsoever on that point between the Copyright Act on the one hand, and the MMPA and NEPA on the other.

PETA compounds the frivolity of this appeal by maintaining it even after Dr. Engelhardt has withdrawn from the case. In its principal brief, PETA makes no mention of Dr. Engelhardt's withdrawal, nor does it address

the resulting "next friend" standing problem. PETA has not alleged a "significant relationship" with Naruto as is required under *Coalition of Clergy v. Bush*. In fact, PETA alleges no relationship with Naruto at all.

Given PETA's inability to make any reasonable arguments for why two separate lines of controlling Ninth Circuit authority do not require affirmance, PETA's appeal does not satisfy the requirement of Federal Rule of Appellate Procedure 38 (frivolous appeal). PETA's positions fall well below the more demanding standard of objective reasonableness under *Fogerty*.

### 3. PETA's Motives in Filing, Prosecuting and Appealing This Action Were Improper.

Indications of PETA's improper motive in filing, prosecuting and appealing this case include: i) PETA's pre-filing familiarity with *Cetacean Community*, ii) PETA's access to sophisticated counsel and iii) PETA's celebratory press release on its website accompanied by a request for donations.

In 2011, PETA filed suit as "next friends" of five orcas "held by [SeaWorld] in violation of Section One of the Thirteenth Amendment to the Constitution of the United States, which prohibits slavery and involuntary servitude." *Tilikum v. Sea World Parks & Entm't, Inc.*, 842 F. Supp. 2d

1259, 1260 (S.D. Cal. 2012) (*quoting* complaint). PETA resisted SeaWorld's

motion to dismiss by citing, among other cases, *Cetacean Community*.[7]

The *Tilikum* court agreed with PETA that *Cetacean Community* was a

relevant precedent, but one that supported SeaWorld's arguments for

dismissal:

> The court notes that while "[a]nimals have many legal rights, protected under both federal and state laws" which provide for the humane treatment and criminalizing cruelty to animals, only human beings have standing to bring such actions. . . . "It is obvious that an animal cannot function as a plaintiff in the same manner as a juridically competent human being."

842 F. Supp. 2d at 1262, n. 1 (*quoting Cetacean Community*, 386 F.3d at

1175-76).

Courts in this circuit analyzing the motivation factor of *Fogerty* have

considered whether a losing party had access to counsel who could warn

them that they were asserting an objectively unreasonable position.[8] Here,

---

[7] ECF 3:11-cv-02476, Dkt. no. 14, p. 21 (S.D. Cal. filed Jan. 13, 2012).

[8] *See, e.g., Berry v. Hawaiian Express Serv.*, 2006 U.S. Dist. LEXIS 78281 at *28 (D. Haw. 2006) ("This Court also finds that Plaintiff's pursuit of claims against Guidance, in spite of notice that its copying constituted fair use, is a strong indication that he had an improper motivation. Plaintiff had access to counsel who could have easily determined that such claims were without legal and factual basis."); *Mattel, Inc. v. Walking Mt. Prods.*, 2004 U.S. Dist. LEXIS 12469 at *7 (C.D. Cal. 2004) ("Plaintiff's conduct also does not appear to be motivated by the protection of a valid interest. Plaintiff had access to sophisticated counsel who could have determined that such a suit was objectively unreasonable and frivolous.").

the same PETA in-house counsel who appeared in *Tilikum* are also counsel in this case.[9] PETA's outside counsel in this action are indisputably sophisticated in the field of intellectual property.[10] PETA's counsel could and should have determined that it was objectively unreasonable to assert that *Cetacean Community* left open the possibility of non-human animal standing under an Act of Congress that does not plainly say that non-human animals have standing.

After the district court hearing where Judge Orrick indicated his intention to dismiss this action for lack of standing, PETA explained how, from its perspective, it wins even while it loses.[11] "Despite this setback, we are celebrating that legal history was made in our unprecedented argument to a federal court that Naruto, a crested macaque monkey, should be the owner

---

[9] *Compare* 842 F. Supp. 2d at 1259 (counsel list) *with* ER 19 (complaint cover).

[10] *See* Irell & Manella LLP, Irell Named to IP Hot List by *National Law Journal*, June 2016, http://www.irell.com/news-item-470.html (last visited Aug. 25, 2016).

[11] With regard to the *Fogerty* motivation factor, the Court may consider statements of PETA's general counsel made outside of the evidentiary record where the authenticity of the statements is not in doubt. *See Maljack Prods. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 889, n. 12 (9th Cir. 1996) ("The district court did not err in considering [unauthenticated internal corporate] documents as indicators of MPI's motivation, however; MPI produced the documents to GoodTimes, many of the documents were on MPI letterhead and MPI does not contest their authenticity.").

of property . . . rather than a mere piece of property himself," said PETA's general counsel.[12] At the bottom of this quoted press release on PETA's website, readers were invited to click the "Donate Now" button. *Id.*

Similarly, PETA's general counsel recently explained how PETA "won" while losing in *Tilikum*: "[W]e were trying to break barriers when we sued SeaWorld, claiming under the 13th Amendment that five orcas were enslaved. The judge wasn't willing to make that step, but just being in the courtroom arguing that case was a victory."[13]

Asserting objectively unreasonable legal positions for the purpose of making "legal history" indicates an improper motive under *Fogerty*. Such litigation conduct suggests that PETA saw pursuing this surefire loser of a case for copyright infringement as a means to gain publicity and donations. That is inconsistent with the purposes of the Copyright Act.

    **4.    The Need for Deterrence and Compensation Favors Awarding Slater His Attorney Fees on Appeal.**

---

[12] PETA, UPDATE: 'Monkey Selfie' Case Brings Animal Rights Into Focus, http://www.peta.org/blog/monkey-selfie-case-animal-rights-focus/, Jan. 6, 2016 (last visited Aug. 25, 2016).

[13] Wall Street Journal Law Blog, Leading Questions: A Chat with PETA Lawyer Jeff Kerr, June 6, 2016, http://blogs.wsj.com/law/2016/06/06/leading-questions-a-chat-with-peta-lawyer-jeff-kerr/ (last visited Aug. 25, 2016).

Courts should deter copyright plaintiffs from irresponsibly pressing legal positions that clearly conflict with controlling precedent. Doing so is wasteful of the courts' and the parties' resources. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 (6th Cir. 2008) ("[I]t was not an abuse of discretion for the district court to award fees and costs against the company in the hope of motivating it to litigate in a more responsible, realistic manner and to deter it from continuing to engage in questionable litigation tactics.").

Here, it was irresponsible of PETA to contend that *Cetacean Community* does not require dismissal for lack of standing, and to maintain its appeal even after Dr. Engelhardt withdrew from the case. A realistic, responsible approach for PETA would have been to concede from the start that *Cetacean Community* requires dismissal of this case for lack of standing. After a stipulated judgment at the district court, PETA could then have presented its non-human animal standing argument to the active members of this Court in a petition for initial hearing en banc (a proceeding where *Cetacean Community* does not bind the judges). Fed. R. App. P. 35(c). That would have imposed little burden on the district court, this Court or the defendants. No defendant would have even been permitted to file a

response to PETA's petition unless the Court had requested one. Fed. R. App. P. 35(e).

A group of then-current and retired Article III judges modeled the responsible way to challenge controlling precedent when they sued for recovery of back pay. *Beer v. United States*, 361 Fed. Appx. 150 (Fed. Cir. 2010).[14] At the Court of Federal Claims, the judges conceded that binding Federal Circuit precedent required dismissal of their action. *Id.* at 151. At the Federal Circuit, the judges filed a petition for initial hearing en banc, directly challenging the binding precedent. *Id.* Should that petition be denied, the judges acknowledged, affirmance of the dismissal would be required. *Id.* at 151-52. After an appellate journey that included a trip to the Supreme Court, the judges prevailed. 696 F.3d 1174 (Fed. Cir. 2012). Throughout the litigation, the judges were careful never to waste judicial or governmental resources by pressing a legal position that was clearly untenable under the controlling precedent they were challenging.

Giving PETA's appeal a most generous interpretation, it is at best an attempt to overturn or at least limit the reach of the categorical holding in *Cetacean Community*. Fair enough – that is something for the Court to

---

[14] *See* Andrew Dhuey, The Great Haste and Less Milling of *Beer v. United States*, Patently-O (Aug. 12, 2010), http://patentlyo.com/patent/2010/08/guest-post-the-great-haste-and-less-milling-of-beer-v-united-states.html

consider upon the filing of an en banc petition. But even with this generous interpretation, it was and is unfair for PETA to force the district court, a three-judge panel of this Court and the defendants to address legal positions that are unreasonable under controlling Ninth Circuit authority. Awarding Slater his fees on appeal would fairly compensate him for the enduring what PETA unnecessarily forced him to endure. It would also deter PETA and similarly-situated parties from engaging in irresponsible litigation conduct in other cases.

### 5.    PETA Is Not an Impecunious Litigant.

An attorney fees award against PETA would not have a "chilling effect . . . or impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin*, 323 F.3d at 766 (citation omitted). PETA alleged in the complaint that it "has the financial and operational resources and the professional expertise to administer and protect Naruto's copyright in the Monkey Selfies." ER 23. Indeed, PETA reports its considerable financial resources on its website: "Total [2015] Revenues $44,923,150. . . . Net Assets End of

[2015] $16,482,262".[15] PETA could easily afford to satisfy an attorney fees award in this case.

### D. Attorney Fees under Section 505 May Be Awarded Against "Next Friend" Litigants.

PETA's status as a purported "next friend" of Naruto, rather than as a named plaintiff, has no bearing on whether it should bear liability for Slater's attorney fees. Courts have taxed costs against "next friends" of losing party plaintiffs, despite contentions that their representational status should insulate them from liability.[16] Likewise, courts have imposed and

---

[15] PETA, Financial Reports, 2015 Financial Statement, http://www.peta.org/about-peta/learn-about-peta/financial-report/ (last visited Aug. 25, 2016); s*ee O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224-25 (10th Cir. 2007) (abuse of discretion for district court not to take judicial notice of financial data on defendant's website, the accuracy of which defendant did not dispute).

[16] *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 256 (5th Cir. 1997); *Petri v. Kestrel Oil & Gas Props., L.P.*, 2013 U.S. Dist. LEXIS 8695 at *18-22 (S.D. Tex. 2013) ("Here Petri has not cited any authority for not following the law regarding taxing costs against the losing party because it was a 'next friend' nor precedent within this Circuit for equitable exceptions.").

threatened attorney fees sanctions against "next friends" under Federal Rule of Civil Procedure 11.[17]

Slater is unaware of any case where a court considered whether to award attorney fees against a "next friend" pursuant to a fee-shifting statute. Perhaps this is because the typical case in which a "next friend" appears is on behalf of a relative who is the named plaintiff in a civil rights action. The fee-shifting statute in federal civil rights cases "allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim." *Fox v. Vice*, 563 U.S. 826, 836 (2011). Given that other rules provide attorney fee sanctions against litigants who prosecute frivolous claims, there will seldom be reason for federal courts to consider awarding fees under a fee-shifting statute against a "next friend" litigant.

Still, this is the exceptional case (in so many ways). It would greatly frustrate the purposes of the Copyright Act if putative "next friends" could shield themselves from liability under Section 505 simply because they are not the named plaintiff. There could be cases such as this one where all of the applicable factors favor awarding fees to the prevailing party. What cold

---

[17] *Moody v. Smith (In re Moody)*, 105 B.R. 368, 372 (Bankr. S.D. Tex. 1989) ("The violations by Ms. Youngs discussed above are not overcome by her argument that she is the 'next friend' of the Debtor."); *Brittain v. Superior Court of Napa County*, 1993 U.S. Dist. LEXIS 8861 at *18-19 (N.D. Cal. 1993).

comfort it would be for a prevailing defendant to win a fee award that is enforceable against a judgment-proof named plaintiff, but not the party solely responsible for filing and prosecuting the action. Nothing in Section 505 suggests that Congress meant to permit that unjust result.

## CONCLUSION

The Court should affirm the judgment of dismissal for lack of statutory standing. The Court should also award Slater his attorney fees on appeal against PETA, the amount thereof to be determined by the district court on remand.

Respectfully submitted,

/s/ ANDREW J. DHUEY
Attorney for Defendants-Appellees,
DAVID JOHN SLATER and
WILDLIFE PERSONALITIES, LTD.

## STATEMENT OF RELATED CASES

Slater is unaware of any related cases.

**Form 6.**     **Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   ☒ this brief contains   5,541   words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)*  Microsoft Word 2010 *(state font size and name of type style)*  14-point Times New Roman , *or*

   ☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

Signature      /s/ Andrew J. Dhuey

Attorney for      Defendants-Appellees David John Slater and WLP, Ltd.

Date      25 August 2016

| 9th Circuit Case Number(s) | 16-15469 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | 25 August 2016 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Andrew J. Dhuey |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) | |