Docket No. 16–15469

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

NARUTO, by and through his Next Friend,

*Plaintiff-Appellant,*

v.

DAVID J. SLATER, *et al.*,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:15-cv-04324 (Orrick, J.)

_____

**REPLY BRIEF OF PLAINTIFF–APPELLANT**

_____

IRELL & MANELLA LLP
David A. Schwarz (Cal. Bar. No. 159376)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067–4276
Telephone:  (310) 277–1010
Facsimile:   (310) 203–7199
dschwarz@irell.com

Attorneys for Plaintiff-Appellant Naruto

# <u>TABLE OF CONTENTS</u>

A.     THE ACT DOES NOT LIMIT STANDING TO HUMANS ................ 1

B.     THIS CASE RAISES AN ISSUE OF FIRST IMPRESSION .............. 6

     1.    *Cetacean* does not control. .......................................................... 6

     2.    The Compendium does not control. ............................................ 8

C.     PETA HAS STANDING AS NARUTO'S NEXT FRIEND .............. 10

D.     DEFENDANT SLATER'S REQUEST FOR ATTORNEY'S FEES IS PREMATURE ................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bleistein v. Donaldson Lithographing Co.*,
    188 U.S. 239 (1903)........................................................................9

*Burrow-Giles Lithographic Co. v. Sarony*,
    111 U.S. 53 (1884).....................................................................8, 9

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ......................................................12

*Cetacean Community v. Bush*,
    386 F.3d 1169 (9th Cir. 2004) ...........................................5, 6, 7, 8

*Christensen v. Harris County*,
    529 U.S. 576 (2000)........................................................................8

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989)........................................................................3

*Coal. of Clergy, Lawyers, & Professors v. Bush*,
    310 F.3d 1153 (9th Cir. 2002) ......................................................11

*Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*,
    531 F.3d 792 (9th Cir. 2008) ..........................................................8

*Ets-Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000) ......................................................10

*Goldstein v. California*,
    412 U.S. 546 (1973)........................................................................2

*Lahr v. Nat'l Transp. Safety Bd.*,
    569 F.3d 964 (9th Cir. 2009) ..................................................10, 11

*Lanard Toys, Ltd. v. Novelty, Inc.*,
    375 F. App'x 705 (9th Cir. 2010)..................................................14

*Lehman v. Lycoming County Children's Servs. Agency*,
    458 U.S. 502 (1982)......................................................................12

*Quality King Distribs., Inc. v. L'Anza Research Int'l, Inc.*,
    523 U.S. 135 (1998) ................................................................... 3

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir.), *cert. denied*, 546 U.S. 827 (2005) .................. 1

*Summers v. Interstate Tractor & Equip. Co.*,
    466 F.2d 42 (9th Cir. 1972) ..................................................... 11

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
    692 F.3d 1009 (9th Cir. 2012) ................................................... 2

*U.S. v. 30.64 Acres of Land*,
    795 F.2d 796 (9th Cir. 1986) .................................................... 11

*Urantia Foundation v. Maaherra*,
    114 F.3d 955 (9th Cir. 1997) ............................................... 6, 9, 10

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ............................................................. 12

**Statutes**

17 U.S.C. § 101 .......................................................................... 4

17 U.S.C. § 201 .......................................................................... 1

17 U.S.C. § 203 .......................................................................... 5

17 U.S.C. § 304 .......................................................................... 4

17 U.S.C. § 501 ................................................................... 1, 2, 3

**Other Authorities**

Ninth Cir. Rule 39–1.6 ............................................................... 13

Fed. R. Civ. P. 9 ..................................................................... 10

Fed. R. Civ. P. 17(c) ................................................................ 12

Defendants cannot dispute that this case raises an issue of first impression: Whether human authorship is a prerequisite for protection under the Copyright Act (the "Act") has never been addressed before this case. Throughout their answering briefs, defendants observe that the Act does not expressly mention animals or animal-created works. Yet neither does it exclude animals or animal-created works. Nothing in the Act limits standing to humans alone, and both the Act's legislative history and prior case law have repeatedly stated that the Act should be construed broadly. The answering briefs offer nothing to the contrary.

## A.    THE ACT DOES NOT LIMIT STANDING TO HUMANS

Defendants offer a tortured reading of the Act to attempt to find a statutory limitation on standing even though Congress never created one. The Act specifically grants standing to the copyright "owner." 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir.), *cert. denied*, 546 U.S. 827 (2005) ("To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright.'"). Nowhere does the Act require an "owner" to be human. Rather, the statute only requires the plaintiff to be the "the author or authors of the work." 17 U.S.C. § 201(a).

Moreover, the threshold for authorship is very low. The Supreme Court has repeatedly held that the concept of 'author' should have the broadest possible meaning: "While an 'author' may be viewed as an individual who writes an

10006722                                        1

original composition, the term, in its constitutional sense, has been construed to mean an 'originator,' 'he to whom anything owes its origin.'" *Goldstein v. California*, 412 U.S. 546, 561 (1973) (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884) (*Sarony*). Generally, the author is simply "the creator of the copyrighted work." *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012). Here, Naruto has sufficiently alleged that he created the Monkey Selfies. Nothing more is required.[1]

Defendant Blurb argues that the notification provisions of section 501(b)—which grants standing to copyright plaintiffs—indicates that Congress intended to somehow limit the definition of "owner" to human beings. Not so. The first sentence of section 501(b) is unambiguous: "The legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the owner of it." Nowhere in that provision is a requirement that the "legal or beneficial owner" of a copyright be a human being. All that is required for standing is ownership.

However, Defendants attempt to misread the second sentence of section 501(b) as somehow limiting the scope of the first sentence. The second sentence reads: "The court may require such owner to serve written notice of the action

---

[1] In their papers, defendants call into question the veracity of Naruto's claim that he created the Monkey Selfies without human intervention. However, on a motion to dismiss, the Court must deem Naruto's allegations at true.

with a copy of the complaint upon any person shown, by records of the Copyright Office or otherwise, to have or claim to an interest in the copyright ….” *Id.* Yet, again, it is unambiguous that the reference to “person” in the notification provision is distinct from the reference to “owner.” Indeed, the statute contemplates that the “person” receiving notification of the suit is a third-party to the proceeding— someone entirely distinct from the owner. Thus, the notification provision in no way indicates congressional intent to limit authorship to humans.

Moreover, the Act’s use of the word “person” is not limited to human beings. Federal courts routinely recognize that corporations are authors and have copyright standing. *See, e.g.*, *Quality King Distribs., Inc. v. L’Anza Research Int’l, Inc.,* 523 U.S. 135, 138 (1998). Yet corporations are not referenced anywhere in section 501(b). Indeed, the Supreme Court has gone even further and has recognized that ***unincorporated associations*** have copyright standing. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 733 (1989) (author was “nonprofit unincorporated association dedicated to eliminating homelessness”). In other words, being a legal entity is not a prerequisite for standing. *See id.* Yet nowhere in the Act is there an explicit reference to unincorporated associations, much like there is no reference to animals.

Given the unassailable proposition that corporations have standing, defendants reason that the Act must specifically call out that term. But the Act’s

only usage of the term "corporation" occurs when it defines a "performing rights society" and the "proprietor" of "an establishment or a food service or drinking establishment." 17 U.S.C. § 101. Neither of these definitions has any relation to the instant case.

Defendants settle for the next best thing they could find in the Act's text, namely a reference to "corporate bodies." But that reference also occurs in an unrelated context: The 1976 Act combines two features, a *New Act* governing works created from January 1, 1978 onwards plus *Transitional Provisions* applicable to works created through December 31, 1977. The latter had to specify the disposition of works by "corporate bodies," given that previous law called out that category. *See* 17 U.S.C. § 24 (repealed 1909 Act). But the former contains no pertinent reference to corporations. In other words, the *New Act* never uses the term "corporations" as potential authors, even though courts routinely grant corporations standing to sue in their capacity as authors. Parallel logic indicates that the absence of any statutory reference to "animals" in the *New Act* is as insignificant as its omission of "corporations."

Defendants also question whether "anonymous works" can be registered on behalf of animals. The Act defines an anonymous work as "a work on the copies or phonorecords of which no natural person is identified as author." 17 U.S.C. § 101. In other words, an anonymous work is an unsigned work. Defendants

- 4 -

misread this definition to require that anonymous works are only those for which a "natural person" is the author, albeit unidentified.  This reading would exclude, however, anonymous works created by authors other than natural persons, such as corporations and unincorporated associations.  No court has ever defined "anonymous works" so narrowly.  Rather, the plain understanding of the definition is simply a work where an author has not been identified.

Finally, defendants argue that the Act employs "human" terms by providing for the transfer of copyrights to the children and widows of an author.  *See* 17 U.S.C. §§ 101, 203, and 304.  Providing for inheritance rights falls well short of an inference restricting standing to humans only.  For example, identifying the widow or children of an anonymous author would be as difficult as it would be for Naruto.  In addition, by recognizing that corporations can be authors, the Act makes it clear that neither marriage, procreation, nor even being human is a precondition for standing.  No one would argue that an unmarried, childless human cannot be an "author," even though that human would—like Naruto—never leave behind a "widow or widower."  Defendants further ask the Court to speculate as to how the rights of an animal author are inherited under the statute.  But those questions are not currently before the Court.  The sole question is whether Naruto is an "author."

### B.     THIS CASE RAISES AN ISSUE OF FIRST IMPRESSION

Defendants dispute that this is a case of first impression.  First, they incorrectly contend that the issue was decided in *Cetacean Community v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (*Cetacean*), which addressed whether animals have standing under the Endangered Species Act and related statutes.  As explained below, the Act differs from the ESA in fundamental ways.  Second, defendants argue that this Court should be bound by the *Compendium of the U.S. Copyright Office's Practices* ("Compendium"), which states that animal-created works cannot be registered.  However, the Compendium does not explain its reasoning and is not binding on this Court.  Indeed, in the one case where the Ninth Circuit has considered the relevant portions of the Compendium, it rejected its analysis.  *See Urantia Foundation v. Maaherra*, 114 F.3d 955, 958 (9th Cir. 1997).

### 1.     Cetacean *does not control.*

*Cetacean* addressed whether animals have independent standing to sue under the Endangered Species Act ("ESA"), the Marine Mammal Protection Act ("MMPA") and the National Environmental Policy Act ("NEPA").  However, the Court's conclusion in *Cetacean* is not binding here, as *Cetacean* addressed a statutory scheme substantially different from the Act.

First, *Cetacean* held that animals lacked standing under the ESA because the ESA contains "an explicit provision granting standing to enforce the duties created

by the statute" that is limited to a "person," expressly defined as "an individual, corporation, partnership, trust, association, or another private entity …." *Id.* at 1177. In sum, the statute excluded animals from its definition of standing. *See id.*

Second, *Cetacean* noted that neither the MMPA nor the NEPA creates an independent private right of action. *Id.* at 1778–79. In other words, neither statute by itself creates standing to sue. However, both statutes are enforceable under the Administrative Procedures Act ("APA"). Thus, whether animals have standing to enforce either the MMPA or the NEPA depends on whether they have standing under the APA. *Cetacean* concluded they do not, however, because, like the ESA, the APA specifically limits standing to "a person." *Id.* at 1178 ("Section 10(a) of the APA does not define "person" to include animals.").

Thus, all of the claims at issue in *Cetacean* arose from statutory schemes that expressly limit standing to "persons." This stands in stark contrast to the Act, which broadly grants standing to all copyright "owners," with no attempt made to limit the definition of "owner." Indeed, it is impossible to apply the logic of *Cetacean* to the Act. For example, *Cetacean* assumes that animals cannot sue under the ESA and APA because those statutes do not expressly authorize suits by animals. Yet, similarly, the Act does not expressly authorize suits by corporations and other non-human entities, which courts recognize all the time. Thus, it is clear

- 7 -

that the Act—unlike the ESA and APA—is not to be interpreted as narrowly as the holding of *Cetacean* would suggest.[2]

In any event, to the extent that *Cetacean* made statements concerning the standing of animals under other statutes not before the court, such statements are nothing more than dicta which are not binding here. *Cetacean*, 386 F.3d at 1173 ("A statement is dictum when it is made during the course of delivering a judicial opinion, but is unnecessary to the decision in the case and is therefore not precedential.") (internal quotations omitted).

## 2. *The Compendium does not control.*

Defendants also erroneously rely on the Compendium. Publications by the Copyright Office are only authoritative to the extent that they "have the power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Here, the Compendium is not persuasive because it does not explain why it prohibits animal-created works from being registered.

---

[2] Defendant Slater correctly notes that *Cetacean* does not reference the effect of sovereign immunity on its interpretation of the ESA. Unlike statutes such as the ESA and APA, which are by necessity construed narrowly because of the implications of sovereign immunity, the Act has been historically construed broadly. *See e.g., Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*, 531 F.3d 792, 802 (9th Cir. 2008) ("[T]he United States must waive its sovereign immunity before a federal court may adjudicate a claim brought against a federal agency, and [it] has done so through the above-discussed ESA and APA provisions …").

- 8 -

Rather than offer an explanation, the Compendium merely cites two cases. *See* Compendium § 306. First, it cites *Trade-Mark Cases*, 100 U.S. 82, 94 (1879), which held that copyright law protects "the fruits of intellectual labor" that "are founded in the creative powers of the mind." Second, it cites *Sarony*, which held that copyright law is limited to "original intellectual conceptions of the author." 111 U.S. at 58. Both of these cases, however, address the originality requirement of copyright protection—*i.e.*, the prohibition of actual copying. *See Urantia Foundation*, 114 F.3d at 958 ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.") Yet defendants do not dispute that the Monkey Selfies are original, lest they never would have become so famous.

In addition, the Compendium errs by assuming that the creativity requirement of originality must come from a human. It is important to note that the issue of animal-created works was not before the Supreme Court when it decided *Trade-Mark Cases* and *Sarony,* and neither case addressed whether the "creative powers of the mind" must come from a human mind. *See Trade-Mark Cases*, 100 U.S. at 94. Moreover, the Supreme Court has repeatedly emphasized that the "level of creativity required for copyright protection" is "extremely low."

*Urantia Foundation*, 114 F.3d at 959 (citing *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 345 (1991)).

Thus, it is an open question whether animals can meet the requirements of creativity. Over a century of case law dealing with photographs suggest that they can. *See Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903) ("The least pretentious picture has more originality in it than directories and the like, which may be copyrighted."); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074 (9th Cir. 2000) ("photographs generally satisfy this minimal standard").

Finally, this Court has already rejected the Compendium's denial of copyright protection for works created by non-humans. In *Urantia Foundation*, this Court observed that the "copyright laws, of course, do not expressly require 'human' authorship," and therefore concluded that even a book allegedly written by divine beings could be subject to copyright protection. 114 F.3d at 959.

### C.   PETA HAS STANDING AS NARUTO'S NEXT FRIEND

Defendants argue for the first time that PETA lacks the requisite relationship with Naruto to act as his next friend. Before the District Court, defendants only challenged Naruto's standing—not PETA's. Arguments raised for the first time on appeal are generally waived. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 980 (9th Cir. 2009). The Ninth Circuit only considers "purely legal arguments raised

- 10 -

for the first time on appeal … where consideration of the issue would not prejudice the opposing party's ability to present relevant facts." *Lahr*, 569 F.3d at 980.[3]

Here, defendants concede that whether PETA has the capacity to serve as a next friend is a factual one. *See Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002) ("[T]he contours of the requisite 'significant relationship' do not remain static, but must necessarily adapt to the circumstances facing each individual [party]. 'Significance' is a relative concept, depending on the individual [party's] plight… Moreover, the concept of 'true dedication' is a subjective one, difficult of measurement."). Moreover, the decision whether to appoint someone as a litigant's "next friend" is "normally left to the sound discretion of the trial court and may be reviewed only for abuse of that discretion." *U.S. v. 30.64 Acres of Land*, 795 F.2d 796, 804 (9th Cir. 1986). Defendants did not challenge PETA's standing in the proceedings below. PETA has not been given an opportunity "to present relevant facts that could affect [the Court's] decision," *Lahr*, 569 F.3d at 980, and the District Court was not asked to weigh the evidence and exercise its discretion. *See 30.64 Acres of Land*, 795 F.2d at 804.

---

[3] In the analogous context of a party's representative capacity under Rule 9 of the Federal Rules of Civil Procedure, courts have held that the failure to raise a challenge in a timely manner results in a waiver. *See Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49–50 (9th Cir. 1972) ("Since Interstate did not raise the defense of plaintiff's capacity to sue by specific negative averment in its answer, or at any time until appeal, it is deemed to have waived that defense.").

10006722

Had PETA's next friend status been challenged in the District Court, PETA would have submitted declarations and other evidence indicating that it satisfies the requirements of next friend standing. As stated in the complaint, PETA is the largest animal rights organization in the world and operates, in part, under the principle that as sentient beings animals have rights that are or should be recognized in law and protected by courts. Since its inception, PETA has championed establishing the rights and legal protections available to animals beyond their utility to human beings or the belief that they are mere "things" devoid and undeserving of any rights. PETA has the financial and operational resources and professional expertise to protect Naruto's copyright. In addition, had the District Court determined that the facts alleged in the complaint were inadequate, PETA would have been given an opportunity to amend the complaint to allege additional facts. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("leave to amend should be given freely"). By waiting until the appeal, defendants have deprived PETA of that opportunity.

Finally, defendants cite *Whitmore v. Arkansas*, 495 U.S. 149 (1990), which arose in the context of a habeas proceeding, where next friend status is not commonly granted. *See Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 523 (1982). Outside that context, courts often permit "next friends" to prosecute actions on behalf of minors and incompetents, as acknowledged by

*Whitmore. See* 495 U.S. at 163, n.4 (discussing cases); *see also* Fed. R. Civ. P. 17(c); Compendium §§ 405.2–405.3 (Copyright Office accepts applications from the representatives of minors and incompetents).

There is no issue as to Naruto's Article III standing; the question presented for decision is whether the Act gives him standing. At minimum, the Court should resolve whether Naruto has standing and leave it for the District Court to decide, on remand, whether PETA has the capacity to serve as a next friend (assuming that the issue has not been waived), potentially after filing an amended complaint.

## D. DEFENDANT SLATER'S REQUEST FOR ATTORNEY'S FEES IS PREMATURE

Defendant Slater's brief includes a premature request for attorney's fees. As discussed above, the decision of the District Court should be reversed in Naruto's favor. Thus, no attorney's fees should be awarded in this case.[4]

In addition, Ninth Circuit Rule 39–1.6 states that a request for attorney's fees should be filed *after* the latter of "the expiration of the period within which a petition for rehearing may be filed" or "the Court's disposition of the petition [for rehearing]." Furthermore, Ninth Circuit Rule 39–1.6(b) requires the party to

---

[4] The request also ignores the District Court's order, which states that "[a]ny motions for attorneys' fees incurred prior to the entry of the judgment shall be filed … within 14 days after the Ninth Circuit dismisses any appeal or mandate issues, if an appeal is filed." [Dist. Ct. Dkt. 47.]

- 13 -

include "a detailed itemization" of the tasks performed, the amount of time spent on those tasks, counsel's hourly rates, and an affidavit "attesting to the accuracy of the information." Here, Defendant Slater has followed none of these procedures. For this reason alone, the Court should deny Defendant Slater's request.

But even if the Court disagrees, the issue of fees should not be addressed during this appeal on the merits. Addressing issues related to attorney's fees would not serve judicial economy. No request for fees has yet to be presented to the District Court, there have been no factual findings concerning an award of attorney's fees, and Defendant Slater's co-defendant has not submitted a similar request—meaning that any consideration of fees would have to be done piecemeal.

Indeed, in all of the cases cited by Slater where this Court addressed the issue of attorney's fees along with the merits of a copyright appeal, this Court did so because it was simultaneously reviewing an award of attorney's fees that had been entered by the district court. *See, e.g., Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 714 (9th Cir. 2010). Here, there have been no factual findings concerning the propriety of attorney's fees—as evidenced by Slater's attempt to cite a variety of sources outside the record of these proceedings.

For these reasons, the Court should reject any request for attorney's fees until after the merits of the appeal have been resolved.

Dated:  September 12, 2016

IRELL & MANELLA LLP

By:   /s/ David A. Schwarz

Attorneys for Plaintiff–Appellant Naruto,
by and through his Next Friend, People
for the Ethical Treatment of Animals, Inc.

*Of Counsel:*

Jeffrey S. Kerr, Esq.
General Counsel
PETA FOUNDATION

10006722

- 15 -

| 9th Circuit Case Number(s) | 16-15469 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 9/12/2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ David A. Schwarz

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)